Franklin Ciaccio
Gerald W. Griffin
Bryce Bernards
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Telephone: 212-732-3200
Facsimile: 212-732-3232
Email: ciaccio@clm.com
*Attorneys for Defendant U.S. Bank National Association*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| TERRESTAR NETWORKS, INC., *et al.*, | : | Case No. 10-15446 (SHL) |
| Debtors. | : | (Jointly Administered) |
| | : | |

------------------------------------------------------------------X

| | | |
|---|---|---|
| SPRINT NEXTEL CORPORATION and OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TERRESTAR NETWORKS, INC., | : | Adv. Pro. No. 10-05461 (SHL) |
| | : | |
| Plaintiff and Plaintiff-Intervenor, | : | |
| v. | : | |
| U.S. BANK NATIONAL ASSOCIATION, in its capacity as Indenture Trustee and Collateral Agent for the 15.0% Senior Secured Payment-In-Kind Notes due 2014, AD HOC GROUP OF NOTEHOLDERS OF 15% SENIOR SECURED NOTES, and TERRESTAR NETWORKS, INC., | : | |
| | : | |
| Defendant and Defendant-Intervenors. | : | |

------------------------------------------------------------------X

## US BANK'S REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES ........................................................................................ii

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT.................................................................................................................2

   I. US BANK HAS A VALID PRE-PETITION SECURITY
      INTEREST IN THE DEBTORS' GENERAL INTANGIBLES
      THAT EXTENDS TO PROCEEDS OF A SALE OF THE
      FCC LICENSES POST-PETITION ..................................................................2

      A. The Debtors Pledged Their General Intangibles to US Bank,
         Which Includes Their Private Property Rights In the FCC Licenses ...............2

      B. US Bank's Security Interest Attached To The Debtors' Private
         Property Rights In The FCC Licenses Prior To The Bankruptcy.....................4

   II. THE EQUITIES OF THE CASE EXCEPTION OF
      11 U.S.C. § 552(b)(1) DOES NOT APPLY TO
      US BANK'S SECURED INTEREST IN THE
      FCC LICENSES .................................................................................................7

   III. US BANK'S SECURED INTEREST IN THE
       FCC LICENSES SHOULD NOT BE EQUITABLY SUBORDINATED............9

CONCLUSION........................................................................................................... 11

# TABLE OF AUTHORITIES

## CASES

In re Atlantic Business & Community, 994 F.2d 1073 (3d Cir. 1993) ............................... 3

In re Beach Television Partners, 38 F.3d 535 (11th Cir. 1994) ............................... 3, 5

In re Brazelton Cedar Rapids Group LC, 264 B.R. 195 (N.D. Iowa 2001) ............................... 8

In re Bennett Funding Group, Inc., 255 B.R. 616 (N.D.N.Y. 2000) ............................... 9

In re Cheskey, 9 F.C.C.R. 986 (1994) ............................... 2, 3

In re Cleveland Freightlines, Inc., 14 B.R. 777 (Bankr. N.D. Ohio 1981) ............................... 3

In re Coruch, 51 B.R. 331 (D. Or. 1985) ............................... 8

In re CCGK Investors, 145 B.R. 908 (N.D. Ill. 1992) ............................... 8

Delbridge v. Prod. Credit. Assoc., 104 B.R. 824 (E.D. Mich. 1989) ............................... 9

First Pennsylvania Bank, N.A. v. Wildwood Clam, Inc., 535 F. Supp. 266
    (E.D. Pa. 1982) ............................... 3

Freightliner Market Dev. Corp. v. Silver Wheels Freightlines, Inc., 823 F.2d 362
    (9th Cir. 1987) ............................... 3

In re Genuario, 109 B.R. 550 (Bankr. D.R.I. 1989) ............................... 3

In re Media Properties, Inc., 311 B.R. 244 (W.D. Wisc. 2004) ............................... *Passim*

MLQ Investors, L.P. v. Pacific Quadracasting, Inc., 146 F.3d 746 (9th Cir. 1998) .. *Passim*

Milliken v. Bradley, 433 U.S. 267 (1977) ............................... 8

In re Muma Servs., Inc., 322 B.R. 541 (D. Del. 2005) ............................... 9

National Labor Relations Bd. v. Donna-Lee Sportswear Co., Inc., 836 F.2d 31
    (1st Cir. 1987) ............................... 10

In re O'Neill's Shannon Village, 750 F.2d 679 (8th Cir. 1984) ............................... 3

In re PBR Communications Sys., Inc., 172 B.R. 132 (Bankr. S.D. Fla. 1994) ............................... 3

In re Ridgely Communications, 139 B.R. 374 (Bankr. D. Md. 1992) ............................... *Passim*

State St. Bank and Trust Co. v. Arrow Commc'ns, Inc., 833 F. Supp. 41 (D. Mass. 1993) ........................................................................................................... 3, 5

In re Thomas Communications, Inc., 166 B.R. 846 (S.D. W. Va. 1994) ..................... 3

In re Tracy Broadcasting Corp., 438 B.R. 323 (Bankr. D. Colo. 2010) ...................... 6

In re Trans-Texas Petroleum Corp., 33 B.R. 67 (N.D. Tex. 1983) ............................. 8

United Virginia Bank v. Slab Fork Coal Co., 784 F.2d 1188 (4th Cir. 1986) ............. 8

Urban Communicators PCS Ltd Partnership v. Gabriel Capital, L.P., 394 B.R. 325 (S.D.N.Y. 2008) ............................................................................................. 3, 5, 6

## STATUTES

11 U.S.C. § 552(a) ....................................................................................................... 5, 7

11 U.S.C. § 552(b) .................................................................................................... 1, 2, 7

11 U.S.C. § 510(c) .......................................................................................................... 11

## CODES

UCC § 9-203 ..................................................................................................................... 5

UCC § 9-408 ..................................................................................................................... 5

## OTHER AUTHORITIES

S. Rep. No. 95-989 (1978) ............................................................................................... 8

Clark & Clark, The Law of Secured Transactions Under the Uniform Commercial Code, ¶ 2.04(3) (2010) ............................................................................................ 3, 6

# US BANK'S REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND IN SUPPORT OF ITS CROSS MOTION FOR SUMMARY JUDGMENT

## PRELIMINARY STATEMENT[1]

US Bank in its capacity as Indenture Trustee and Collateral Agent for the holders of 15% Senior Secured Payment-In-Kind Notes due 2014, issued by TSN, respectfully submits this memorandum of law in reply to the Combined Reply Brief of Plaintiff Sprint Nextel Corporation ("Sprint Reply Brief") and the Memorandum of Law In Further Support Of the Motion For Summary Judgment Of The Official Committee Of Unsecured Creditors ("Committee's Reply Brief"), both dated April 8, 2011, and in further opposition to Plaintiffs' Motions and support of US Bank's Cross-Motion.

Plaintiffs' claims for a declaratory judgment invalidating US Bank's secured interest in the FCC Licenses are based primarily on their misreading of FCC policy. Contrary to Plaintiffs' reading, FCC policy expressly permits a security interest in the private property rights of an FCC license as a general intangible of a licensee, which is distinct from the FCC's public right to regulate the license. This reading of FCC policy causes Plaintiffs' arguments for invalidating US Bank's lien to fall like a house of cards because security interests in a governmental license as a general intangible, (1) attach to the license at the time it is granted under the UCC, and (2) extend to proceeds of a sale of the license under section 552 of the Bankruptcy Code. Plaintiffs' equitable claims also fail because the "equities of the case" exception of section 552(b) does not apply to Sprint's alleged efforts to clear the bandwidth associated with the Licenses, and because there is absolutely no basis to equitably subordinate US Bank's secured claim.

---

[1] This Reply Memorandum of Law adopts the defined terms in US Bank's Memorandum of Law In Opposition To Plaintiffs' Motions For Summary Judgment And In Support Of Its Cross-Motion For Summary Judgment dated March 25, 2011 ("US Bank's Initial Brief").

1

# ARGUMENT
## I.
## US BANK HAS A VALID PRE-PETITION SECURITY INTEREST IN THE DEBTORS' GENERAL INTANGIBLES THAT EXTENDS TO PROCEEDS OF A SALE OF THE FCC LICENSES POST-PETITION

A. **The Debtors Pledged Their General Intangibles To US Bank, Which Includes Their Private Property Rights In The FCC Licenses**

Plaintiffs argue that they are entitled to summary judgment on Counts 1 of the Complaints because US Bank does not have a valid pre-petition lien on the "FCC Licenses themselves." Sprint Reply Brief at 2; Committee Reply Brief at 4, 6. According to Plaintiffs, a lender cannot have a security interest in private property rights of an FCC license, as general intangibles of the licensee, without violating the FCC's policy against security interests in the FCC "license itself." See Sprint Reply Brief at 4-5, Committee Reply Brief at 4-8. The Committee states, "'private rights' that would constitute general intangibles cannot include the right to sell the license, since this is tantamount to a security interest in the license itself." Committee Reply Brief at 7.[2]

The FCC, however, changed its policy against security interests seventeen years ago to permit a security interest in the private property rights of an FCC license, including the right to proceeds of a license, because such a security interest does not interfere with the FCC's public right to approve the sale of a license. In re Cheskey, 9 F.C.C.R. 986, 987 (1994) (citing In re

---

[2] Sprint further argues that US Bank conflates and blurs the distinction between Counts 1 and 2 of the Complaints, failing to address Count 1 directly, and thus, according to Sprint, it is entitled to summary judgment on Count 1. Sprint Reply Brief at 2, 5-6. US Bank does no such thing. As explained below, US Bank has a perfected security interest in the Debtors' general intangibles, including private property rights in the FCC Licenses, that attached pre-petition, and thus Count 1 should be dismissed. It is Sprint that conflates and blurs the distinction between private and public rights of an FCC License set forth in Ridgely and Cheskey, and followed by numerous courts in multiple jurisdictions, including in this jurisdiction, to argue that US Bank does not have a valid pre-petition lien on the Licenses. See US Bank's Initial Brief at 9-14 and the cases cited therein. Of course, if Sprint recognized this well established distinction which permits a lien on the private property rights of an FCC license as a general intangible of the licensee, Counts 2 of the Complaints fail because proceeds of a sale of a governmental license constitute proceeds of the general intangible under Section 552(b) of Bankruptcy Code. See Point 1.B infra.

Ridgely Communications, Inc., 139 B.R. 374, 379 (Bankr. D. Md. 1992)). Adopting the holding in Ridgely, the FCC stated in Cheskey that "'a creditor may perfect a security interest in the debtors' FCC broadcasting licenses, limited to the extent of the licensee's proprietary rights in the licenses vis-a-vis private third parties.'" Id. at 987 n.7 (quoting Ridgely, 139 B.R. at 379).[3]

In Ridgely, the court explained that such a security interest in an FCC license is a security interest in a licensee's "general intangibles" under the UCC, analogous to security interests in other governmental licenses that are subject to government regulation, that may be perfected pre-petition and prior to a sale of the license post-petition. Ridgely, 139 B.R. at 379 (citing Freightliner Market Dev. Corp. v. Silver Wheels Freightlines, Inc., 823 F.2d 362 (9th Cir. 1987) (trucking license is a general intangible); In re O'Neill's Shannon Village, 750 F.2d 679 (8th Cir. 1984) (liquor license is a general intangible); First Pennsylvania Bank, N.A. v. Wildwood Clam, Inc., 535 F. Supp. 266 (E.D. Pa. 1982) (commercial clamming license is a general intangible); In re Genuario, 109 B.R. 550 (Bankr. D.R.I. 1989) (liquor license is a general intangible); and In re Cleveland Freightlines, Inc., 14 B.R. 777 (Bankr. N.D. Ohio 1981) (certificate of public convenience and necessity is a general intangible)); see also In re Atlantic Bus. & Community, 994 F.2d 1073, 1075 (3d Cir. 1993) (finding lien on proceeds of a sale of an FCC license analogous to liens on liquor licenses, which have limited duration, restricted alienability, and are

---

[3] The Committee further argues that Cheskey does not support the "proposition that the FCC prohibition against a security interest in an FCC License has been relaxed or changed." Committee Reply Brief at 5. This argument is directly contradicted by the FCC's express language in Cheskey and the vast authority that has interpreted Cheskey as adopting the reasoning of Ridgely and permitting a security interest in the private property rights in an FCC license. Cheskey, 9 F.C.C.R. at 986 (holding that "[a] security interest in the proceeds of the sale of a license does not violate Commission Policy); see also MLQ Investors, L.P. v. Pacific Quadracasting, Inc., 146 F.3d 746, 748 (9th Cir. 1998) (same); Urban Communicators PCS Ltd Partnership v. Gabriel Capital, L.P., 394 B.R. 325, 336 (S.D.N.Y. 2008) (same); In re Beach Television Partners, 38 F.3d 535, 537 (11th Cir. 1994) (same); In re Media Properties, Inc., 311 B.R. 244, 249-50 (W.D. Wisc. 2004) (same); In re Thomas Communications, Inc., 166 B.R. 846, 849 (S.D. W. Va. 1994) (same); State St. Bank and Trust Co. v. Arrow Commc'ns, Inc., 833 F. Supp. 41, 49 (D. Mass. 1993) (same); In re PBR Communications Sys., Inc., 172 B.R. 132, 135 (Bankr. S.D. Fla. 1994) (same); Clark & Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 2.04(3) (2010) (In Cheskey, "[T]he FCC decided to modify its written policy to make it clear that, although a security interest may not be taken in the sale of the license to an FCC-approved third-party, it may be taken in the proceeds of sale to an FCC-approved third party.").

3

controlled by issuing authorities); MLQ Investors, Inc., 146 F.3d at 748 (lien on FCC license is analogous to lien on a trucking license).

Here, US Bank perfected a security interest in the Debtors' general intangibles, including its private property rights in the FCC Licenses, when it filed the UCC Statement. US Bank asserts its security interest against the Debtors' right to proceeds of a sale of the License to a third-party, not against the FCC's public right to approve the sale to a third-party. While Plaintiffs argue their positions as if they were vindicating FCC policy, the FCC has never challenged US Bank's security interest in the FCC Licenses because the security interest does not interfere with its right to regulate the Licenses in any way whatsoever. In fact, the FCC recognizes that federal bankruptcy courts, not the FCC, determine issues concerning security interests in private property rights in FCC licenses. See Ridgely, 139 B.R. at 377, 380; FCC Ruling, ¶ 29. Under Ridgely and its progeny, US Bank has a valid lien on the FCC Licenses limited only by the FCC's public right to approve the sale of the Licenses.[4] Thus, Counts 1 of the Complaints should be dismissed.

B.  **US Bank's Security Interest Attached To The Debtors' Private Property Rights In The FCC Licenses Prior To The Bankruptcy**

Despite the authority cited above, Plaintiffs argue that the right to proceeds of a sale of an FCC license falls outside the UCC's definition of "general intangibles," absent a pending FCC-

---

[4] Sprint argues throughout its Reply Brief that defendants have "known" that they do not have a security interest in the FCC Licenses because the Debtors' offering memorandum discloses that "current FCC Policy prohibits the grant of a security interest in an FCC radio frequency license or authorization. . . . As a result, . . . holders of notes will not have a direct security interest in these licenses and authorizations." Sprint Reply Brief at 4 n.3, 5, 9, 22. But Sprint fails to quote the entire disclosure. The Offering Memorandum goes on to state that an investor's "ability to foreclose on, or exercise certain rights or remedies with respect to certain collateral requires prior approval from the FCC to the extent it would result in an assignment or transfer of control of our FCC authorizations (whether as a matter of law or fact)." Thus, the disclosure, when read in its entirety and taken in proper context, confirms the FCC's changed policy that a secured interest in an FCC license may be limited by the FCC's public right to regulate the assignment or transfer of the license, ie. a secured investor can't foreclose on an FCC license unless the FCC approves the sale of the license. As explained in US Bank's Initial Memorandum, this is not inconsistent with the Security Agreement or the Debtors' public filings, which plainly state that the Debtors pledged all their rights in the FCC Licenses to US Bank as security for payment of the Notes, and that the security interest ranks senior to its existing and future debt. US Bank's Initial Brief at 14 n.11.

4

approved sale of the license. Sprint Reply Brief at 6-7; Committee's Reply Brief at 6-7. Thus, according to Plaintiffs, US Bank's security interest has not attached to the FCC Licenses, as general intangibles under the UCC, and thus cannot attach to proceeds of a future sale of the Licenses post-petition under section 552(a) of the Bankruptcy Code. Sprint Reply Brief at 7-10, 13-14; Committee's Reply Brief at 7. Plaintiffs further argue that the cases cited above do not consider attachment of a security interest in an FCC license under the UCC or section 552 of the Bankruptcy Code and, therefore, are distinguishable. Sprint Reply Brief at 3, 15-20; Committee's Reply Brief at 7-11. Plaintiffs' arguments are specious.

The vast majority of the cases cited above analyze a security interest in the private property rights in an FCC license under the UCC or section 552, and have held that these property rights are "general intangibles" under the UCC. See, e.g., MLQ Investors, 146 F.3d at 749 (holding private right to proceeds of sale of an FCC license a general intangible under the UCC); Urban Communicators, 394 B.R. at 336 (same, quoting MLQ Investors); Beach, 38 F.3d at 537 (finding that a debtor had an ownership interest in an FCC license that may be pledged as a security under UCC § 9-203); Media Properties, Inc., 311 B.R. at 249-50 (finding that debtor had ownership interest in an FCC license that may be pledged as a security under UCC § 9-203, and thus the security interest avoided the effect of 11 U.S.C. § 552); State St. Bank, 833 F. Supp. at 48-49 (holding private right to proceeds of sale of an FCC license a general intangible under UCC); Ridgely, 139 B.R. at 379 (same). Thus, these cases are indistinguishable.[5]

---

[5] Sprint further argues that section 9-408 of the UCC, which prohibits any attempt to restrict a security interest in a general intangible, undermines Defendants' arguments because New York's version of this section does not prohibit restrictions in "statutes or governmental rules or regulations," and even if it had, section 9-408 cannot trump applicable federal law. Sprint Reply Brief at 10-12. Presumably, although not expressly stated, Sprint relies, once again on its misreading of the FCC's policy regarding security interests in FCC licenses as the governmental rule that is not effected by New York's section 9-408. As explained above, the FCC's policy expressly permits a security interest in the private property rights of an FCC license as a general intangible of the licensee. See Point I.a supra. Thus, New York's section 9-408 supports the FCC's policy in that it prohibits an attempt to restrict a debtor's ability to provide such a security interest.

5

In MLQ Investors, the Ninth Circuit made clear that a security interest in the private property rights in an FCC license, as a general intangible, attaches to the general intangible at the time it is pledged as collateral for a loan, regardless of whether there is a pending FCC-approved sale. MLQ Investors, 146 F.3d at 749. The Ninth Circuit explained that to hold that such a security interest does not attach until the time of a sale of the license, as the Plaintiffs argue here, would render private property rights in FCC licenses meaningless, and a secured interest in licenses worthless, because a security interest would always fall behind claims of competing creditors. Id.;[6] see also Urban Communicators, 394 B.R. at 336 (Judge Sweet holding that a security interest in an FCC license attached at the time it was granted and prior to the sale of the license); Media Properties, Inc., 311 B.R. at 249-50 (same).[7]

Although MLQ Investors dealt with the IRS as the competing creditor, the decision has direct implications under section 552(a) of the Bankruptcy Code. Treating a licensee's private property right in the license as a general intangible that later gives rise to proceeds avoids the effect of section 552(a) because a pre-petition security interest in a general intangible that is transformed into proceeds post-petition is protected under section 552(b). In fact, the court in

---

[6] Sprint argues that such a holding would have no effect on the availability of credit in the broadcast industry. Sprint Reply Brief at 22. This is untrue. Lenders to corporations in the broadcast industry are dependent on a corporation's going concern value, which on default, can only be realized by extending their security interest to the proceeds generated from the sale of the corporation's FCC licenses. To hold that such security interests do not extend to proceeds of a sale of a license obtained post-petition would cripple the availability of credit in the broadcast industry. Clark & Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 2.04(3) (2010).

[7] Plaintiffs attempt to distinguish Urban and Media on the additional ground that at the time these cases were decided there was no contrary authority to MLQ Investors, but now there is, referring to In re Tracy Broadcasting Corp., 438 B.R. 323 (Bankr. Colo. 2010). According to Plaintiffs, Tracy is the only case to decide the issues here. Sprint Reply Brief at 20-23; Committee Reply Brief at 9-10, 12-13. As explained in US Bank's Initial Brief, Tracy is the only case that supports Plaintiffs' position and it was wrongly decided. US Bank's Initial Brief at 23-24. Tracy, however, is not the only case to address the issues here. The cases cited above have held that a private property interest in an FCC license is a general intangible of the licensee, that this general intangible may be pledged as security for a loan, that the security interest attaches to the general intangible at the time it is granted, and that the security interest extends to the proceeds of a sale of a license post-petition.

6

Media relied on MLQ Investors in holding that a security interest in a debtor's FCC license avoids section 552(a) because the proceeds of a sale of the license are considered proceeds of a debtor's general intangibles under section 552(b). Media Properties, Inc., 311 B.R. at 249-50.[8] Thus, Counts 2 of the Complaints should be dismissed because US Bank has a valid pre-petition security interest in the Debtors' general intangibles that will extend to proceed of the sale of the Licenses.

## II.
## THE EQUITIES OF THE CASE EXCEPTION OF 11 U.S.C. § 552(b)(1) DOES NOT APPLY TO US BANK'S SECURED INTEREST IN THE FCC LICENSES

Plaintiffs argue that Counts III of the Complaints are not yet ripe for summary judgment because the parties have not completed discovery. Sprint Reply Brief at 29; Committee Reply Brief at 3 n.4. Sprint further argues that US Bank's Motion is based on an overly restrictive application of the "equities of the case" exception. Specifically, Sprint argues that the exception is not limited to situations where unencumbered assets of the estate are used to increase the value of a secured creditor's collateral, and that the exception may apply to Sprint's alleged efforts to clear the bandwidth associated with the Licenses. Sprint Reply Brief at 29-34. Sprint, however, fails to provide any applicable authority for its argument and fails to even address the authority cited by US Bank to the contrary.

Sprint fails to cite a single case where a court has invoked the "equities of the case" exception to subordinate a secured claim on the ground that an unsecured creditor has expended its own resources to increase the value of the secured collateral. Sprint Reply Brief at 29-34.

---

[8] The Committee argues that this reasoning effectively reads section 552(a) out of existence because "any creditor with a security interest in general intangibles would be entitled to claim post-petition proceeds in any type of personal property, notwithstanding the absence of an enforceable security interest in any of the underlying property giving rise to the proceeds." Committee's Reply Brief at 11-12. The Committee is incorrect. A creditor with a security interest in an FCC license has an enforceable security interest in the private property rights of the FCC license, and thus may claim post-petition proceeds of the sale of the license.

7

Instead, Sprint cites to three cases that have nothing to do with the "equities of the case" exception. Sprint Reply Brief at 30 (citing Milliken v. Bradley, 433 U.S. 267 (1977) (dealing with equitable remedies in the school desegregation context)); In re Brazelton Cedar Rapids Group LC, 264 B.R. 195 (N.D. Iowa 2001)(dealing with a court's equitable power to avoid the effects of *res judicata*); In re CCGK Investors, 145 B.R. 908 (N.D. Ill. 1992) (dealing with the concept of equitable estoppel in the bankruptcy claims process).

Sprint also cites to the legislative history of § 552. Sprint Reply Brief at 30-31. However, the legislative history states that the "equities of the case" exception "covers the situation where raw materials, for example, are converted into inventory, or inventory into accounts, <u>at some expense to the estate</u>, thus depleting the fund available for general creditors." S. Rep. No. 95-989 at 91 (1978) (emphasis added). In other words, the exception prevents a secured creditor from reaping the benefits of collateral that has appreciated in value as a result of the use of unencumbered assets intended for unsecured creditors. Thus, the legislative history supports US Bank's position, not Sprint's position.

Sprint then cites three cases for the proposition that the exception gives the bankruptcy court considerable latitude in applying pre-petition security interests to post-petition proceeds. Sprint Reply Brief at 31 (citing United Virginia Bank v. Slab Fork Coal Co., 784 F.2d 1188 (4th Cir. 1986); In re Coruch, 51 B.R. 331 (D. Or. 1985); and In re Trans-Texas Petroleum Corp., 33 B.R. 67 (N.D. Tex 1983)). Again, while these cases support giving bankruptcy courts latitude to favor unsecured creditors claiming that unencumbered assets increased the value of secured collateral, which Sprint does not claim here, they do not support extending the Court's latitude to unsecured creditors claiming they used their own assets to increase the value of the secured collateral.

8

Here, no unencumbered funds that would otherwise flow to the unsecured creditor's were used to increase the value of the Debtors' private property rights in the FCC Licenses. Thus, the "equities of the case" exception does not apply. See In re Muma Services, Inc., 322 B.R. 541 (D. Del. 2005); In re Bennett Funding Group, Inc., 255 B.R. 616, 634 (N.D.N.Y. 2000); Delbridge v. Prod. Credit. Assoc., 104 B.R. 824, 826 (E.D. Mich. 1989). Sprint has made no attempt in its Reply Brief to distinguish these cases. Thus, US Bank's Motion for summary judgment on Count III should be granted.

### III.
### US BANK'S SECURED INTEREST IN THE FCC LICENSES SHOULD NOT BE EQUITABLY SUBORDINATED

Finally, Sprint argues that it is entitled to summary judgment on Count IV because Sprint "is entitled to be reimbursed in some amount" for its efforts clearing the bandwidth associated with the Licenses. Sprint Reply Brief at 26. This argument is also unsupported by any authority. The issue here is not whether Sprint is entitled, in the abstract, to some amount of reimbursement from the Debtor. Rather, the issue is whether Sprint's unsecured claims can somehow leapfrog US Bank's secured claim on some legal basis. With respect to this issue, Sprint offers no authority supporting its contention that its unsecured claims should be entitled to greater priority than US Bank's secured claim.

Sprint attempts to rely on the FCC Ruling, which it claims "contains the FCC's final findings of fact, ruling and decision on Sprint Nextel's entitlement to be reimbursed for BAS relocation costs." Sprint Reply Brief at 26. As explained in US Bank's Initial Brief, this reliance is misplaced. While the FCC may have stated that the Debtors have a general obligation to reimburse Sprint for its BAS relocation efforts, it did not address Sprint's actual reimbursement claims or the issue of priority between secured and unsecured creditors. In fact, the FCC

specifically stated that "Sprint Nextel's recovery of any reimbursement claim against the bankrupt debtors will be governed by the proceedings in the bankruptcy court, rather than by this Commission or in the district court case initiated by Sprint Nextel." FCC Ruling, ¶ 29.[9] For these reasons, Sprint has merely established that it is an unsecured creditor with a potential right to reimbursement from the Debtor. On the other hand, Sprint completely fails to establish that its unsecured claims are entitled to greater priority than US Bank's secured claims.

Moreover, even assuming, arguendo, that the FCC did issue a decision with respect to Sprint's unsecured claim and its effect on US Bank's secured claim, which it did not, such a decision would have no preclusive effect on US Bank because the FCC was not acting in a judicial capacity when it issued the FCC Ruling, and US Bank did not have reasonable notice of the claim or an opportunity to be heard in opposition to it, as due process requires. See US Bank's Initial Brief at 28-29 and the cases cited therein.

Sprint attempts to circumvent due process requirements by arguing that US Bank is in privity with the Debtor because "U.S. Bank's interest [sic] are entirely derivative of the Debtors' interests." Sprint Reply Brief at 27. In support of this position, Sprint relies again on National Labor Relations Bd. v. Donna-Lee Sportswear Co., Inc., 836 F.2d 31 (1st Cir. 1987). That case, however, explains that parties can be deemed in privity when their interests "cannot be disassociated" from each other. Id. at 34-35. And, as already explained, US Bank's interests can be disassociated from the Debtor's interests. Thus, Donna-Lee Sportswear is inapposite, and Sprint has failed to establish that US Bank was in privity with the Debtor.

Additionally, Sprint argues that US Bank's secured claim must be subordinate to its unsecured claim in order to protect the public interest in ensuring reimbursement for costs

---

[9] The FCC further explained that "any proceedings by Sprint Nextel on a claim for monetary recovery against a debtor in [a bankruptcy proceeding] is a matter for the Bankruptcy Court and is not addressed in this Report and Order and Declaratory Ruling." FCC Ruling, ¶ 79.

10

incurred during BAS relocation. See Sprint Reply Brief at 27-29. As explained in detail above and in US Bank's Initial Brief, US Bank's perfected security interest does not interfere with the FCC's public right to regulate the FCC Licenses. See Point I supra; US Bank's Initial Brief at 10-14 and the cases cited therein.

Finally, Count IV fails to state a claim for equitable subordination under § 510(c) of the Bankruptcy Code. See US Bank's Initial Brief at 29-30 and the cases cited therein. Sprint does not even attempt to dispute the fact that it fails to state a claim for equitable subordination. Thus, the Court should deny Sprint's Motion and grant US Bank's Cross-Motion on Count IV of the Sprint Complaint.

## CONCLUSION

WHEREFORE, for the foregoing reasons, US Bank respectfully requests that the Court (i) deny Plaintiffs' Motions for Summary Judgment, (ii) grant US Bank's Cross-Motion for Summary Judgment, and (iii) grant US Bank all other relief as is just and proper.

Dated: April 15, 2011

CARTER LEDYARD & MILBURN LLP

_____
Franklin Ciaccio
Gerald W. Griffin
Bryce Bernards
2 Wall Street
New York, NY 10005
Telephone: 212-732-3200
Facsimile: 212-732-3232
Email: ciaccio@clm.com

*Attorneys for Defendant U.S. Bank National Association*