ARNALL GOLDEN GREGORY LLP
171 17th Street N.W.
Suite 2100
Atlanta, Georgia 30363
Telephone: (404) 873-8500
Facsimile: (404) 873-8121
Darryl S. Laddin (DL-5130)
Frank N. White
Matthew T. Covell

*Counsel for Sprint Nextel Corporation*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| TERRESTAR NETWORKS, INC. *et al.*, | : | Case No. 10-15446 (SHL) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

----------------------------------------------------------------x

| | | |
|---|---|---|
| SPRINT NEXTEL CORPORATION, and OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF TERRESTAR NETWORKS, INC., *et al.*, | : | Adv. Pro. No. 10-05461 (SHL) |
| Plaintiff and Plaintiff-Intervenor, | : | |
| v. | : | |
| U.S. BANK NATIONAL ASSOCIATION, in its capacity as Indenture Trustee and Collateral Agent for the 15.0% Senior Secured Payment-In-Kind Notes due 2014, AD HOC GROUP OF NOTEHOLDERS OF 15% SECURED NOTES, and TERRESTAR NETWORKS, INC., *et al.*, | : | |
| Defendant and Defendant-Intervenors. | : | |

----------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF SPRINT NEXTEL
CORPORATION'S MOTION FOR RECONSIDERATION OF THE COURT'S
SEPTEMBER 16, 2011 ORDER ON THE PARTIES' CROSS-MOTIONS FOR
SUMMARY JUDGMENT [Docket No. 76] AND THE SEPTEMBER 23, 2011
<u>JUDGMENT [Docket No. 77] ENTERED THEREON</u>**

Pursuant to Fed. R. Civ. P. 59(e),[1] made applicable in this adversary proceeding by Fed. R. Bank. P. 9023, and Rule 9023-1 of the Local Rules of Bankruptcy Procedure for the Southern District of New York, Plaintiff Sprint Nextel Corporation ("Sprint Nextel") hereby moves the Court to reconsider and amend its September 16, 2011 Order on the parties' cross-motions for summary judgment [Docket No. 76] (the "Order") and the September 23, 2011 Judgment [Docket No. 77] (the "Judgment") entered thereon.

Specifically, Sprint Nextel requests that the Court amend its rulings in the Order and the Judgment granting summary judgment in favor of Defendant U.S. Bank, and denying summary judgment in favor of Sprint Nextel, on Count IV of the Sprint Complaint.[2] Sprint Nextel respectfully submits that the Court's ruling on Count IV, as explained in the Court's August 19, 2011 Memorandum of Decision [Docket No. 69] (the "Decision"), is based on (a) an erroneous finding of fact that was not urged by the Defendants and is refuted by the relevant evidence, and (b) a perception of Count IV, as seeking to deny the Court its authority to determine the priority and treatment of claims in bankruptcy, that is not consistent with the arguments that Sprint Nextel has made or the relief that it has requested in connection with that cause of action. With this factual error and misperception corrected, the applicable law dictates that summary judgment on Count IV should have been granted in favor of Sprint Nextel or, at a minimum, that both Sprint Nextel's and U.S. Bank's requests for summary judgment on Count IV should have

---

[1] While motions for reconsideration are not expressly provided for in the Federal Rules of Civil Procedure, a motion for reconsideration filed within the time specified by Rule 59(e) (as modified in adversary proceedings by Bankruptcy Rule 9023) is treated as a motion to alter or amend judgment under that rule. 12 MOORE'S FEDERAL PRACTICE § 59.30[7] (Matthew Bender 3d Ed. 2011). *See also, e.g.*, McCowan v. Sears, Roebuck & Co., 908 F.2d 1099, 1103 (2d Cir. 1990) (substantive motions filed within time specified by Rule 59(e), regardless of their label or whether similar relief might have been obtained under another provision, are functionally motions under Rule 59(e)).

[2] Capitalized terms not otherwise defined in this Objection shall have the meanings ascribed to them in the Order and the Decision.

been denied, leaving Count IV pending, the relevant factual record to be developed further in discovery, and Count IV to be adjudicated at trial.

In support of its Motion, Sprint Nextel shows the Court as follows:

## I. BACKGROUND FACTS

### A. Count IV of the Sprint Complaint

In Count IV of the Sprint Complaint, Sprint Nextel sought a declaratory judgment that, because the FCC expressly conditioned the Debtors' interest in and right to operate under the S-Band License on satisfaction of their *pro rata* reimbursement obligation to Sprint, any pre-petition security interest that the Noteholders took in the S-Band License or the proceeds or value thereof, even if properly perfected and eligible to attach post-petition notwithstanding section 552 of the Bankruptcy Code, is likewise conditioned upon satisfaction of that obligation as a matter of law. (*See* Memorandum of Law in Support of Plaintiff Sprint Nextel Corporation's Motion for Partial Summary Judgment [Docket No. 39] (the "Sprint Memo") at 32-35.)

The statutory bases for Count IV are Article 9 of the NYUCC and section 506 of the Bankruptcy Code. (Id. at 32.) As the Court acknowledged in its Decision,

> The NYUCC allows secured parties no greater interest in collateral than the debtor itself holds. *See* N.Y. U.C.C. LAW § 9-203(b)(2). Similarly, Section 506 provides . . . that "a secured claim [is secured] to the extent of the value of such creditor's interest in the estate's interest in such property . . . ." 11 U.S.C. § 506(a)(1).

(Decision at 28-29.) *See also* N.Y.U.C.C. § 9-203(b)(2), Official Comment No. 6 ("a security interest attaches only to whatever rights a debtor may have, broad or limited as those rights may be"). The Court also acknowledged that "[b]oth sections address *the extent to which an interest is secured*." (Id. at 29 (emphasis added).) On this legal basis, and given the unchallenged

3

evidence that the FCC had, in fact, expressly conditioned the Debtors' use of the S-Band License on satisfaction of their reimbursement obligation to Sprint Nextel (Sprint Memo at 8-9), Sprint Nextel asked the Court to declare, as a matter of law, that any effective pre-petition security interest held by the Noteholders -- no matter how valid, effective or senior in priority to the claims of other creditors of the Debtors -- is no greater than the interest obtained by the Debtors and now held by their Chapter 11 estates, and thus is also conditioned upon and subject to that specific obligation to Sprint Nextel. (Id. at 32-33.)

B. **The Court's Summary Judgment Rulings On Count IV**

In its Order and Judgment, however, the Court denied Sprint Nextel's request for summary judgment on Count IV, and instead granted summary judgment in favor of U.S. Bank. As explained in the Decision, there were two justifications for the Court's rulings in this regard.

First, the Court found that the FCC "has never explicitly conditioned use of the S-Band License on payment of full pro rata reimbursement to Sprint [Nextel]." (Decision at 29.) In support of its motion for summary judgment, Sprint Nextel had cited the FCC's 2000 Ruling that, as the Court acknowledged, "provides that use of the S-Band License is expressly conditioned on reimbursement to Sprint [Nextel] for clearing the bandwidth." (Id.) In its summary judgment filings, U.S. Bank never attempted to refute that the FCC had placed such a condition on the Debtors' use of the S-Band License.[3] But in its Decision, the Court effectively dismissed the 2000 Ruling cited by Sprint Nextel, pointing instead to the FCC's 2009 Ruling, which the Court said acknowledged the Debtors' reimbursement obligation to Sprint Nextel but did not expressly characterize it as a "condition" to use of the S-Band License, and to language

---

[3] In its cross-motion for summary judgment on Count IV, U.S. Bank characterized the FCC's placement of this condition on the Debtors' S-Band License as an "argu[ment]" by Sprint Nextel (U.S. Bank's Memorandum of Law [Docket No. 55] at p. 28) rather than a matter of fact established in the public record, but never purported to refute the existence of the condition or offer any contrary evidence.

4

in the FCC's 2010 Declaratory Ruling, which the Court construed as a refusal by the FCC of "Sprint Nextel's request to make full reimbursement a condition for use" of the S-Band License. (Id. at 29-30.)

Second, the Court concluded that Sprint Nextel's position on Count IV "ignores that it is the role of the Bankruptcy Court, not the FCC, to determine the priority of Sprint[ Nextel]'s claim vis-à-vis other parties' claims." (Id. at 30.) In so doing, the Court expressed its perception that Count IV effectively – and impermissibly -- seeks to have the FCC usurp this Court's authority to determine the priority and treatment of claims in bankruptcy, a function that even the FCC has expressly disclaimed any intention of performing. (Id. at 30-31.)

## II. ARGUMENT AND CITATION OF AUTHORITY

For the reasons that follow, Sprint Nextel respectfully submits that the two stated bases for the Court's decision on Count IV are demonstrably incorrect, and accordingly requests that the Court reconsider and amend its Order and Judgment granting summary judgment in favor of U.S. Bank, and against Sprint Nextel, in connection with Count IV.

### A. The Court's Conclusion That The FCC Never Placed A Condition On The Debtors' Use Of The S-Band License Is Contrary To All Of The Relevant Evidence In The Public Record, Including The FCC's 2010 Declaratory Ruling.

First, the Court should reconsider and amend its Order and Judgment because its ruling on Count IV is based on an erroneous finding of fact – *i.e.*, that the FCC "has never explicitly conditioned use of the S-Band License on payment of full pro rata reimbursement to Sprint [Nextel]." (Decision at 29.) That factual conclusion is not only unsupported, but in fact contrary to all of the relevant evidence before this Court and in the public record.

In support of its motion for summary judgment, Sprint Nextel cited the FCC's 2000

5

Ruling[4] that, as the Court acknowledged, "provides that <u>use of the S-Band License is expressly conditioned on reimbursement to Sprint [Nextel]</u> for clearing the bandwidth." (Decision at 29 (emphasis added).) By itself, therefore, the FCC's 2000 Ruling constitutes relevant, admissible evidence that directly contradicts the Court's finding that the FCC "has never explicitly conditioned use of the S-Band License on payment of full pro rata reimbursement to Sprint [Nextel]." At a minimum, the FCC's express ruling in 2000 that the Debtors' use of the S-Band License was subject to a reimbursement condition should have prevented the Court from making the opposite finding as a matter of undisputed fact. *See, e.g.*, Fed. R. Civ. P. 56 (grant of summary judgment is warranted only if "there is no genuine dispute as to any material fact").

In its motion for summary judgment, Sprint Nextel's cited only the 2000 Ruling on this point because, quite simply, the FCC's placement of an express condition on the Debtors' use of the S-Band License was not a fact on which there appeared to be any dispute. In its summary judgment filings, U.S. Bank never urged a contrary conclusion or attempted to refute Sprint Nextel's evidentiary showing in this regard. Had U.S. Bank purported to dispute the matter, however, Sprint Nextel would have cited additional and more contemporary rulings by the FCC in its reply brief to demonstrate the unquestionable existence of the license condition. In fact, the evidence in the public record uniformly confirms, beyond any legitimate dispute, that the FCC has absolutely and explicitly conditioned the Debtors' use of the S-Band License on satisfaction of their *pro rata* reimbursement obligation to Sprint Nextel.

---

[4] *Amendment of Section 2.106 of the Commission's Rules to Allocate Spectrum at 2 GHz for use by the Mobile Satellite Service*, Second Report and Order and Second Memorandum Opinion and Order, 15 FCC Rcd. 12315, ¶ 71 (2000) ("Subsequently entering MSS licensees . . . will, <u>as a condition of their licenses</u>, compensate the first entrant on a *pro rata* basis, according to the amount of spectrum the subsequently entering licensees are authorized to use.") (emphasis added); *Amendment of Section 2.106 of the Commission's Rules to Allocate Spectrum at 2 GHz For Use by the Mobile-Satellite Service,* Second Report and Order and Second Memorandum Opinion and Order, 15 FCC Rcd. 19403, ¶¶ 67, 69, 71 (2000) ("All MSS licensees who benefit from relocation of BAS are responsible for contributing, <u>as a condition of their licenses</u>.") (emphasis added).

1. **Nothing in the FCC's 2009 Ruling disclaims, or even questions, the condition placed on use of the S-Band License in the FCC's 2000 Ruling.**

In its Decision, the Court dismissed the 2000 Ruling, in part, by noting that the FCC, in its 2009 Ruling, had acknowledged the Debtors' reimbursement obligation to Sprint Nextel but not expressly characterized it as a "condition" of the S-Band License. (Decision at 29-30.) But, while the 2009 Ruling did not expressly reference the placement of a condition on use of the S-Band License, nothing in the 2009 Ruling purported to withdraw the condition originally imposed by the FCC in the 2000 Ruling, or was in any way inconsistent with the continuing existence of that condition. In fact, while the FCC never used the term "condition" in the 2009 Ruling, it referred to the Debtors' reimbursement obligation to Sprint Nextel in other, synonymous terms that plainly confirmed the FCC's view of that obligation as mandatory on the part of the Debtors. For example, the FCC stated in the 2009 Ruling that the MSS entrants, including the Debtors, "<u>must pay</u> their *pro rata* share of BAS relocation costs" (2009 Ruling at ¶ 80 (emphasis added)), referred to the cost-sharing obligation as <u>a "requirement"</u> (id. at ¶¶ 87, 98 (emphasis added)), and reiterated its "goal of <u>ensuring</u> that later entrants reimburse, on a *pro rata* basis, the first entrant that paid for relocation," *i.e.*, Sprint Nextel. (Id. at 98 (emphasis added).) In short, and contrary to the Court's apparent conclusion in the Decision, there is no language in the 2009 Ruling that can fairly be interpreted as an implicit rescission by the FCC of the condition placed on use of the Debtors' S-Band License in the 2000 Ruling.

2. **The reimbursement obligation is an express condition of the S-Band License itself, and the FCC reiterated that condition in an accompanying ruling issued in January 2010.**

The conditioning of the Debtors' use of the S-Band in the S-Band License on satisfaction of their reimbursement obligation to Sprint Nextel is also expressed on the face of the S-Band

7

License itself, which on January 13, 2010 was extended to permit the Debtors to provide service using ancillary terrestrial components ("ATC"). The S-Band License (attached as Exhibit A hereto) is a matter of public record, and provides that it "is granted subject to [certain] special provisions and <u>general conditions</u>," one of which is that "MSS . . . operations are subject to the terms and <u>conditions set forth in the Order and Authorization, DA 10-60, released January 13, 2010</u>." (S-Band License, Exhibit A at 4 (emphasis added).)

That FCC Order and Authorization (also a public record and attached as exhibit B hereto), in turn, provides that while the Debtors would be permitted to commence operations before complying with their reimbursement obligation to Sprint Nextel, the FCC would resolve the issues concerning BAS reimbursement in its ongoing proceedings involving the Debtors and Sprint Nextel – i.e., the proceeding in which the FCC subsequently issued its 2010 Declaratory Ruling. The January 13, 2010 Order and Authorization further stated that, in order "[t]o avoid prejudicing the resolution of the reimbursement issues in that proceeding," the Debtors' authorization to operate under the S-Band License was conditioned "on full compliance with the action taken by the Commission in that proceeding." (January 13, 2010 Order and Authorization, Exhibit B at ¶ 18. *See also* <u>id.</u> at ¶ 34(f) ("Operation under this authorization is <u>conditioned upon and subject to</u> compliance with any [further] action taken" in the ongoing proceedings involving the Debtors and Sprint Nextel) (emphasis added).) Thus, not only was the S-Band License originally conditioned on satisfaction of the reimbursement obligation to Sprint Nextel, as expressly stated by the FCC in the 2000 Ruling, but when the Debtors received ATC authorization in January of 2010, the FCC reaffirmed that condition and expressly made the grant of ATC authority to the Debtors subject to the ongoing proceedings that ultimately led to adoption of the 2010 Declaratory Ruling.

### 3. The FCC did not "refuse" to impose the condition on the S-Band License in its 2010 Declaratory Ruling.

Approximately eight months later, in the ongoing proceedings involving the Debtors and Sprint Nextel, the FCC issued its 2010 Declaratory Ruling. Therein, contrary to the Court's conclusion in the Decision, the FCC continued to make it clear that the Debtors' use of the S-Band License would be conditioned upon satisfaction of the pro rata reimbursement obligation to Sprint Nextel. The FCC stated, among other things, that it would not depart from the traditional *Emerging Technologies* policy[5] of requiring *pro rata* reimbursement of band clearing costs, and that subsequent band entrants, including the Debtors, "<u>will be responsible</u> for reimbursing Sprint Nextel for relocating the BAS incumbents." (2010 Declaratory Ruling at ¶¶ 71-72 (emphasis added).)

The language in the 2010 Declaratory Ruling that the Court has characterized as a refusal by the FCC "to make full reimbursement [to Sprint Nextel] a condition for use of" the S-Band License is, in fact, anything but. The issue addressed in that section of the 2010 Declaratory Ruling was not *whether* the Debtors would be absolutely required to reimburse Sprint Nextel as a condition to use of their S-Band License, but rather, *when* the Debtors would be required to make the reimbursement payment to Sprint Nextel, and what would happen if they failed to do so when required. On the latter issue, Sprint Nextel had argued that a failure to pay by the Debtors should result in an automatic suspension of their right to operate. In the language cited by the Court in its Decision, the FCC deferred an immediate decision on the issue:

> We will adopt no specific policies or procedures as to how we should proceed if later new entrants fail to reimburse an earlier entrant for the cost of relocating BAS incumbents *as required*. Instead, we will address complaints regarding

---

[5] The *Emerging Technologies* proceedings were the proceedings before the FCC, in the mid-1990s, in which the FCC developed the policy that an early entrant into a band of spectrum that relocates incumbents is entitled to reimbursement from a later entrant of its *pro rata* portion of band clearing costs. *See, e.g.*, 2010 Declaratory Ruling at FN 6.

9

> failure to make required payments that are filed before the Commission through our existing enforcement mechanisms.

(2010 Declaratory Ruling at ¶ 73 (emphasis added).) This was not a "refusal" by the FCC to require reimbursement to Sprint Nextel as a condition to use of the Debtors' S-Band License. Rather, the FCC stated that it had not yet determined how best to implement and enforce that condition, and deferred the enforcement mechanism to a later date. In no uncertain terms, however, the FCC made it clear in the 2010 Declaratory Ruling that the condition was still in effect, and that it was reserving any and all enforcement mechanisms at its disposal – including suspension of the right to operate under the S-Band License[6] – pending a later determination of how best to implement that condition under the existing circumstances. In a footnote tied to the above-quoted language, in fact, the FCC expressly stated, "As is the case in our *Emerging Technologies* proceedings, 'we emphasize that we intend to use the full realm of enforcement mechanisms available to us in order to ensure that reimbursement obligations are satisfied.'" (Id. at FN 176 (emphasis added).)

### 4. The Court's conclusion that the FCC "has never explicitly conditioned use of the S-Band License on payment of full pro rata reimbursement to Sprint [Nextel]" is plainly incorrect.

Based on all of the foregoing, the Court's conclusion in its Decision that the FCC "has never explicitly conditioned use of the S-Band License on payment of full pro rata reimbursement to Sprint [Nextel]" (Decision at 29) is not only unsupported by any evidence, but in fact entirely rebutted by all of the evidence in the public record. Because this erroneous finding of fact – which was not even urged by U.S. Bank – was one of the two stated bases for

---

[6] Suspension of a licensee's right to operate, for failure to satisfy an express condition on its license, is very much within the FCC's regulatory authority. "[An FCC] licensee whose right to use of a frequency is contingent on satisfying specified conditions has no right to use of the frequency when the conditions are not met." P & R Temmer v. FCC, 743 F.2d 918, 928 (D.C. Cir. 1984).

the Court's Order and Judgment granting summary judgment on Count IV in favor of U.S. Bank, Sprint Nextel respectfully submits that the Court should reconsider and amend its Order in that regard. With this factual error corrected, the applicable law dictates that summary judgment on Count IV should have been granted in favor of Sprint Nextel.

Alternately, if the Court continues to believe that there is some evidence to support its conclusion, then the Court must at a minimum conclude that the evidence on the issue is in conflict, and that the continuing existence of a condition on use of the Debtors' S-Band License is therefore a factual issue on which there remains a genuine dispute to be adjudicated after further discovery. In that event, both Sprint Nextel's and U.S. Bank's requests for summary judgment on Count IV should have been denied, and the Court's Order and Judgment should be amended so as to vacate the grant of summary judgment in U.S. Bank's favor.

> **B.** **The Court's Conclusion That Count IV Seeks To Have The FCC Usurp This Court's Authority To Determine The Priority And Treatment Of Claims In Bankruptcy Is Inconsistent With The Arguments That Sprint Nextel Has Made And The Relief That It Has Requested In Connection With Count IV.**

The Court also should reconsider and amend its Order and Judgment because its ruling on Count IV is based on a misperception of that cause of action. In its Decision, the Court stated that the second basis for its ruling in favor of U.S. Bank on Count IV was that Sprint Nextel's position on that claim "ignores that it is the role of the Bankruptcy Court, not the FCC, to determine the priority of Sprint [Nextel]'s claim vis-à-vis other parties' claims." (Decision at 30.) But this perception is not consistent with the arguments that Sprint Nextel has made or the relief that it has requested in Count IV.

1. **Far from seeking to usurp this Court's authority, Count IV specifically invokes the Court's authority to determine the proper treatment of Sprint Nextel's claim, and to enforce and implement applicable provisions of the Bankruptcy Code and the N.Y.U.C.C.**

By definition, Count IV of the Sprint Complaint does not ignore the role of the Bankruptcy Court, or attempt to deny the Court its authority to determine the priority and treatment of claims in bankruptcy. It is the Bankruptcy Court, not the FCC, in which Sprint Nextel filed this adversary proceeding, and from which Sprint Nextel seeks relief in this case. In fact, and far from seeking to usurp the Court's role as the arbiter of its claims in the Debtors' Chapter 11 case, Sprint Nextel specifically seeks in Count IV to have this Court apply, enforce and give effect to the applicable provisions of the Bankruptcy Court and the N.Y.U.C.C. – albeit in light of the FCC's prior regulatory rulings respecting the Debtors' S-Band License – and order that Sprint Nextel's claims be treated as those provisions require, in the exercise of its unquestioned jurisdiction in that regard.[7]

2. **The Supreme Court's decision in *FCC v. NextWave* is not applicable to this case.**

Sprint Nextel submits that the Court's citation in its Decision to the Supreme Court's opinion in FCC v. NextWave Personal Communications Inc., 537 U.S. 293 (2000) is misplaced. The NextWave case presented a distinctly different set of circumstances, and is inapplicable to the facts presented and relief requested in this case. Count IV of the Sprint Complaint does not seek an exception to discharge, revocation of the S-Band License or any other form of regulatory or punitive action against the Debtors. In fact, and in stark contrast to NextWave, *Count IV of*

---

[7] Issues that remain within the FCC's exclusive regulatory purview – such as, for example, the liability to Sprint Nextel of any assignee or purchaser of the S-Band License – are not raised in this adversary proceeding or otherwise before this Court.

*the Sprint Complaint does not seek any relief against the Debtors at all,[8] or to exempt Sprint Nextel from operation of otherwise applicable provisions of the Bankruptcy Code.*

To the contrary, Count IV presumes that the S-Band License will remain in effect and addresses the rights between two *non-debtors* to the proceeds from the sale of that license. Rather than arguing that a section of the Bankruptcy Code does not apply, Count IV also seeks to have the Court apply and enforce a section of the Bankruptcy Code (and a corresponding provision of the N.Y.U.C.C.) *precisely as written*. There is nothing in the NextWave opinion that prevents a Bankruptcy Court from employing a provision of the Bankruptcy Code to enforce, as *against non-debtor third parties,* an express payment condition imposed on a license by the FCC - particularly where, as here, the pre-petition interest in the license claimed by those non-debtor parties is derived entirely from the Debtors' expressly conditional pre-petition interest. In fact, the NextWave decision does not even address these issues. The present case therefore does not implicate any of the questions of statutory construction, or involve an attempt to impose any sort of punitive regulatory relief against the Debtors, that prompted the Supreme Court to rule as it did in NextWave.

### 3. Given that the FCC has placed a condition on the Debtors' use of the S-Band License, the applicable bankruptcy and UCC law requires that summary judgment on Count IV be entered in favor of Sprint Nextel.

In light of the foregoing, and particularly given the condition that the FCC has placed on the Debtors' use of the S-Band License as established in the public record, the applicable bankruptcy and UCC law requires that summary judgment on Count IV be granted in favor of Sprint Nextel. As stated by the Court of Appeals for the District of Columbia Circuit:

---

[8] It bears noting again that the Debtors, after intervening as Defendants in this proceeding, affirmatively chose to take no position on Sprint Nextel's motion for summary judgment. (*See* Debtors' Statement in Response to Plaintiffs' Motions for Summary Judgment [Docket No. 49] at 2.)

13

> An FCC licensee takes its license subject to the conditions imposed on its use. These conditions may be contained in both the Commission's regulations and in the license. Acceptance of a license constitutes accession to all such conditions. A licensee may not accept only the benefits of the license while rejecting the corresponding obligations.

P & R Temmer, 743 F.2d at 928 (*citing* Capital Telephone Co. v. FCC, 498 F.2d 734, 740 (D.C. Cir. 1974)).

So it is in this case. The FCC has granted the S-Band License to the Debtors, but expressly subject to the condition that the Debtors satisfy their reimbursement obligations to Sprint Nextel. Meanwhile, as the Court acknowledged in its Decision,

> The NYUCC allows secured parties no greater interest in collateral than the debtor itself holds. *See* N.Y. U.C.C. LAW § 9-203(b)(2). Similarly, Section 506 [of the Bankruptcy Code] provides . . . that "a secured claim [is secured] to the extent of the value of such creditor's interest in the estate's interest in such property . . . ." 11 U.S.C. § 506(a)(1). Both sections address *the extent to which an interest is secured*.

(Decision at 28-29.) By operation of these provisions, therefore, the condition requiring satisfaction of the reimbursement obligation to Sprint Nextel effectively "runs with" the S-Band License. Accordingly, any effective pre-petition security interest in the S-Band License held by the Noteholders – no matter how valid, effective or senior in priority to the claims of other creditors of the Debtors – is no greater than the interest that was obtained by the Debtors, and thus, as a matter of law, is also conditioned upon and subject to that specific obligation to Sprint Nextel.

WHEREFORE, for all of the foregoing reasons, Sprint Nextel respectfully prays that its Motion be granted, that the Court reconsider and correct its conclusions on Count IV of the Sprint Complaint for the reasons set forth above, and that the Court's September 16, 2011 Order and September 23, 2011 Judgment on the parties' cross-motions for summary judgment be

amended so as to grant Sprint Nextel's motion for summary judgment, and deny U.S. Bank's motion for summary judgment, as to Count IV. In the alternative, Sprint Nextel requests that the Court deny both Sprint Nextel's and U.S. Bank's requests for summary judgment on Count IV, leaving Count IV pending, the relevant factual record to be developed further in discovery, and Count IV to be adjudicated at trial.

Dated: September 27, 2011

ARNALL GOLDEN GREGORY LLP

/s/ Darryl S. Laddin
Darryl S. Laddin (DL-5130)
Frank N. White
Matthew T. Covell
171 17th Street N.W.
Suite 2100
Atlanta, Georgia 30363
Telephone: (404) 873-8500
Facsimile: (404) 873-8501

Attorneys for Sprint Nextel Corporation